STATE OF MISSOURI, at the Relation and to the use of JENNIE O'DONNELL, Respondent, v. JOHN C. BOEPPLE, Defendant, CHANNEY C. CRAWFORD et al., Appellants.

St. Louis Court of Appeals. Submitted on Briefs October 2, 1917. Opinion Filed November 6, 1917.

1, **SHERIFFS AND CONSTABLES:** Liability on Official Bonds for Assault: Sufficiency of Petition. A petition, in an action on the official bond of a constable, which sets out that the deputy in executing a writ of replevin in his hands, had violently assaulted the defendant in the writ, states a good cause of action.

2. ————: Official Bonds: Action: Evidence: Sufficiency. In an action on the official bond of a constable for injuries alleged to have been inflicted by his deputy on relator when the deputy was executing a writ of replevin, evidence *held* sufficient to take the case to the jury.

3. **TRIAL PRACTICE:** Instructions: Refusal. The refusal of requested instruction covered by those given is not error.

4. **APPELLATE PRACTICE:** Review: Verdict: Weight of Evidence. Where there was evidence sufficient to sustain the verdict for plaintiff, the weight and sufficiency of the evidence cannot be reviewed on appeal, and the verdict must be upheld, not having been interfered with by the trial court.

Appeal from the Circuit Court of the City of St. Louis.—*Hon. Rhodes E. Cave,* Judge.

AFFIRMED.

*Thos. J. Rowie, Jr.,* for appellants.

(1) The petition herein fails to state facts sufficient to constitute a cause of action. State ex rel. Hamilton v. May, 177 Mo. App. 717. (2) The court should have given defendants' instruction at the close of the entire case, that under the pleadings and proof plaintiff could not recover. (3) The court erred in refusing to give defendants' instructions. (4) The verdict is against the overwhelming weight of the evidence and must have been the result of bias, prejudice and passion.

*Charles A. Lich* for respondent.

(1) "A sheriff is responsible for all trespasses committed by a deputy by color of his office." State ex rel v. Moore, 19 Mo. 369; State ex rel. v. Claudius, 1 Mo. App. 551; State ex rel. v. Muir, 20 Mo. 303. In their brief appellants contend that any assault which may have been committed in this case was not under color of office, and in support of this very astonishing contention, they cite the case of State ex rel. v. Dierker, 101 Mo. App. 636. (a) The courts have discoursed on what constitutes color of office in the following, which are a few of the many cases on this point: Warrensburg v. Miller, 77 Mo. 56; State ex rel. v. Shacklett, 37 Mo. 280; State ex rel. v. Claudius, 1 Mo. App. 551; State ex rel. v. Lindsay, 73 Mo. App. 472; State ex rel v. Barnett, 96 Mo. 133. (b) "In construing an official bond that construction should prevail which, in the light of attendant circumstances, would make the instrument efficacious, instead of meaningless and ineffective." State ex rel. v. Miserez, 64 Mo. 596. (c) "A constable who executes a writ of restitution in forcible entry and detainer within ten days after rendition of judgment, commits a trespass, for which he and his sureties are liable." State ex rel. v. Weinel, 13 Mo. App. 583. And also in the following cases the courts have held the bond liable for trespass commited by a constable. State ex rel. v. Hadlock, 52 Mo. App. 297; State ex rel. v. Romer, 44 Mo. 99; Parketon v. Pagsley, 142 Mo. App. 537, Bank v. Terrill, 136 Mo. App. 472. "Constable held liable for failing to apprise defendant of his exemption rights,

and bond held liable." State ex rel. v. Lindsay, 73 Mo. App. 472; State ex rel. v. Barnett, 96 Mo. 133. (2) "The verdict of the jury will not be set aside if supported by substantial evidence, on the ground that the opposing evidence greatly preponderated." Johnson v. Barnes, 23 Mo. App. 546; Blumenthal v. Torrino, 40 Mo. 159; McFarland v. Ins. Co., 124 Mo. 204; State v. Bryant, 134 Mo. 246. (a) "If there is conflicting evidence in an action at law, and the issues are correctly submitted, the verdict ends the controversy." Grove v. K. C., 75 Mo. 672. (b) "It is the province of the jury to pass upon the credibility of witnesses and weigh the evidence." Freeman v. Pratt, 66 Mo. App. 283. (c) "The court cannot assume that a verdict is necessarily the result of bias or prejudice, because opposed to the weight of the evidence." St. Louis Brewing Assn. v. Stemke, 68 Mo. App. 52. (d) "Appellate court will not reverse the judgment simply because the jury appear to have disregarded evidence since they may have discredited it." Gregory v. Chambers, 78 Mo. 294. (e) "The appellate court will not review the sufficiency of the evidence, unless there is an entire failure of proof." State v. Fisher, 124 Mo. 460.

REYNOLDS P. J.—This is an action on the official bond of John C. Boepple, constable of the fourth judicial district of the city of St. Louis, on which Chauncey C. Crawford and Joseph E. Sippy are sureties, the bond having been duly approved. It is in ordinary form, conditioned that Boepple "will execute all process to him directed and delivered and pay over all money received by him by virtue of his office, and in every respect discharge all the duties of constable according to law."

It is charged in the petition, after setting out the official character of the constable, that a writ of replevin, directed against the relator and in favor of a piano company named, commanding the constable to take possession of a piano described, was placed in the hands of one Willmore, his duly appointed deputy; that with this writ in his possession, the

198 M. A.—5

deputy proceeded to the store and residence of the relator in the city of St. Louis, entered the premises for the purpose of seizing the property described in the writ, read the writ to her, and being informed by her that she had no such piano in her possession, the deputy pushed the relator from a counter, on which she was leaning, against the opposite wall in so rough and violent a manner that she was seriously and severely injured, in that stitches in her abdomen, which were inserted after an operation on a previous occasion were broken and torn loose, causing relator to be internally injured; that the deputy had threateningly and without cause thrust a revolver in relator's face and later directed his assistants to remove the piano from her premises; that in so acting the deputy had not discharged his duty according to law but by his violent, careless, wanton, cruel and inhuman acts, had exceeded the authority vested in him by law, and that thereby relator had been physically injured as above stated; that the mental strain upon her had caused her to become a nervous wreck and that in consequence of her physical and mental sufferings, relator had been compelled to expend $300 for medicines and medical treatment and had been severely and permanently injured and damaged in the sum of $10,000. Judgment is prayed for the penalty of the bond, $5000, and execution for the full amount and costs.

There was a second count to the petition but that was dismissed at the trial.

Defendants demurred to the petition, which demurrer being overruled, defendants answered jointly, admitting that the defendant Bœpple is the duly elected, qualified and acting constable of the fourth district and that the defendants Crawford and Sippy were the duly qualified and accepted bondsmen on the bond of the constable, but deny all other allegations in the petition.

The cause was tried to the court and a jury and a verdict rendered in favor of relator in the sum of $700. Judgment followed for the penalty of the bond and

awarding execution for the damages, from which, interposing a motion for new trial, as also a motion for judgment *non obstante veredicto,* and these motions being overruled, the defendant sureties have duly appealed to our court.

This is the second time this case has been before our court. The opinion then rendered is not to be officially reported, but will be found under the same title in 184 S. W. 1166. In that case relator here obtained a judgment for $4150, which was set aside by the trial court as excessive. From that action plaintiff appealed and we affirmed the action of the trial court. No point was there raised or decided as to the sufficiency of the petition.

The errors here assigned are, first that the petition fails to state facts sufficient to constitute a cause of action. Second, that the court should have given an instruction at the close of the case that under the pleadings and proof plaintiff could not recover. Third, that the court erred in refusing to give defendants' instructions, and, fourth, that the verdict is against the overwhelming weight of the evidence and must have been the result of bias, prejudice and passion. Of these in their order.

In support of the first error assigned we are referred to the decision of our court in State ex rel. Hamilton v. May, 177 Mo. App. 717, 160 S. W. 1030. We do not think that the facts in that case bring the case at bar within the decision there made. The point in decision in the May Case was that the sureties of the constable were not responsible on his bond for the negligent acts of the constable in executing a writ of replevin. There it was charged that by the officer negligently leaving a door open while he was taking out some property from the premises, an infant child of the relators, then in the premises, had contracted pneumonia from which it died. We there held that such negligence was not a failure on the part of the constable to discharge his duties according to law, but was negligence for which the sureties were not liable. The facts, as set out in the petition in the case at bar, do not

bring it within those in that case. Here it is charged in the petition that the officer, with the writ in his hand, entering the premises of relator to serve and enforce it, had violently assaulted the relator, defendant in the writ, pushed her down, drew a revolver on her and indulged in violent and abusive language. We hold that these acts, as they are set out and charged in the petition, were, if committed, a violation of that condition of the bond, which required the constable, and of course his deputy for whose acts he is responsible, "in every respect (to) discharge all the duties of constable according to law." Surely the constable, or his deputy, was not discharging his duties "according to law," if, as charged in the petition, he made a violent attack upon the person of relator. An officer with a writ in his hand, so acting, if it be true that he did so act, violated this condition of his bond. We therefore, hold that the petition does state facts sufficient to constitute a cause of action.

The second assignment of error, that a demurrer should have been sustained at the close of the case is not tenable. By her own testimony the relator made out her case as pleaded and it was sufficient to take it to the jury.

The third assignment of error is on the refusal of the court to give an instruction to the effect that the burden was on plaintiff to prove, by a preponderance of all the evidence in the case, that the deputy unlawfully pushed plaintiff from a counter on which she was leaning, across the room and against the opposite wall, and that thereby she was injured and that unless the plaintiff, meaning relator, by a preponderance of all the evidence in the case, proved each and every one of said facts, the verdict of the jury must be in favor of defendant. It is argued that this was a correct declaration of law under the pleadings in the case and that it was error for the trial court to refuse it. It would have been improper to have given this instruction, but its refusal in view of the instruction given by the court at the instance of relator, was not

State ex rel. v. Boepple and Crawford.

reversible error. The court placed the case so plainly and clearly before the jury by the principal instruction given that the refusal of this is not reversible error.

The final error assigned, that the verdict is against the overwhelming weight of the evidence and must have been the result of bias, prejudice and passion, cannot be sustained in view of the action of the learned trial court in submitting the case to the jury and in view of the positive testimony of the relator herself. It is true that her testimony was in some respects contradictory with itself, and it is also true that the deputy, his associate, two policemen and possibly one or more witnesses, testified that no such occurrence as described by relator had taken place. But it is to be observed that it appears by the evidence in the case that all of these other witnesses came in after relator claimed that the alleged assault had been made upon her by the officer and were not present at the time; that after the deputy constable had alone entered her premises, he commenced reading the writ. Relator, not understanding that he was a constable, and thinking he was trying to sell a piano, told him she did not want to buy one. When he explained that he had a writ to take a piano out of her possession, she told him that the piano she had was not of the make of that described in the writ; that she had a good piano, which she had paid for; that the deputy thereupon, in the language of the witness, "gritted his teeth, rolled his eyes. He said, 'I am going to take your piano. I have got you. You can't resist me.'" Witness testified that she did not know whether he was a madman or what. She came around the counter in her store and said, "You can't take anything in my store. Everything I have got is paid for," and with that, and as she was leaning on the counter, the deputy "grabbed hold of me and fired me and I landed against the wall on the opposite side and broke all of the stitches where I was operated on five years before, and he throwed a revolver in my face." She testified that at the time the deputy entered she was standing behind the counter waiting on a lady; that the constable told this lady to get out; that he then took hold of both of relator's hands and she repeated, "fired

me as hard as he could throw me. . . . He grabbed me like that (illustrating) and gritted his teeth,'' throwing her across the length of the store. When she struck the wall she fell against the floor; tried to catch herself but couldn't; had fallen against the partition or wall; after that, she testified, the deputy got the piano, first going to the door and calling some men who came in, three or four of them; that, she said, was after he had pushed her and pointed the revolver.

A witness for relator, the young woman referred to, testified that she was in the milinery store of relator on the day named; that a man came in, who she identified as the deputy, and told her to get out of the store, which she did.

There was testimony elicited from relator and from other witnesses tending to show that on a previous trial relator had given testimony inconsistent with the testimony here given. There were a number of witnesses produced on the part of defendant, to the effect that they had gone into the store with the deputy and had neither seen any assault nor heard the officer make the remarks charged, but relator testified that the assault upon her had been made by the deputy when she and he were alone and that the others came in afterwards; that after the occurrence between relator and the deputy, the deputy had gone out and brought in the others.

In case after case it has been held that in an action at law we, as an appellate court, cannot weigh the testimony; conflicts in it, even contradictions which a party may have made in their own testimony, are all matters for the determination of the jury as to where the truth lies. We, on appeal must accept the testimony for plaintiff, where the verdict is not interfered with by the trial court. Its weight and probative value is for the determination of the jury, in the first instance, then for the trial court. The judgment of the circuit court is affirmed. *Allen* and *Becker, JJ.,* concur.