ROSE L. ESMOND, Respondent, *against* ALLEN S. APGAR, Appellant.

(Decided January 7th, 1878.)

It is a good defense to an action brought against an assignee in bankruptcy for the conversion of personal property found by him in the bankrupt's possession, and taken and treated by him in good faith as assets of the bankrupt, and as to which the plaintiff's adverse claim existed while it was in the bankrupt's possession, that the action was not brought within two years after the cause of action accrued;

And the limitation in such a case is a defense as well in actions brought against the defendant personally as in actions brought against him as assignee.

The statute begins to run from the time the demand for the property upon the assignee is made and refused.

---

* Affirmed by Court of Appeals.

APPEAL by the defendant from a judgment of this court, entered in favor of plaintiff, upon the report of Bradbury C. Chetwood, a referee, to whom it was referred to hear and determine the issues.

This action was brought against the defendant, who was the assignee in bankruptcy of L. Morgan & Son, bankrupts, to recover damages for the conversion of certain shares of stock.

The answer among other defenses set up that the defendant was such assignee; that the stock came into his hands with other property of the bankrupts'; that he held it as collateral to a draft accepted by plaintiff's husband, and for other indebtedness of plaintiff's husband to the said firm; that the stock was sold by defendant by direction of the United States District Court, and that the action was not brought within two years after the accruing of the cause of action.

On the trial it appeared that the defendant, who was assignee, as alleged in his answer, found the certificates in the safe of the bankrupts with the draft, and more than two years before this suit, took them in good faith into his possession as assets of the bankrupts, treated them as assets, and sold them under direction of the United States District Court at public auction as assets. It further appeared, that the title of the bankrupts to the stock was disputed while it was yet in their possession.

*William A. Coursen*, for appellants.

*G. S. Van Pelt*, for respondent.

JOSEPH F. DALY, J.—The findings of the referee established that the plaintiff was the owner of two certificates of stock, one for five shares, and one for twenty shares, of the " United States Dairy Company," of the value, at the time of their conversion by defendant, of $1,000 ; that the defendant, who was the assignee in bankruptcy of L. Morgan & Son, converted the stock to his own use; and that this action was not brought within two years from the time when

the cause of action accrued, viz.: in February, 1875. The referee refused to find that the acts of defendant in taking, holding and selling the stock were all done in his capacity and official character as assignee, and refused to hold that this action was barred by the statute. (U. S. Rev. Stat. § 5057).

In this I think he erred. The evidence shows conclusively that the defendant assumed the right of holding and selling the plaintiff's stock on no other ground than that it was part of the assets of L. Morgan & Son, of whom he was assignee. Even though the bankrupts had no right whatever to the stock, and it lay in their safe or remained in their possession merely for safe keeping, it was delivered by them to their assignee in bankruptcy, or it was found by him among their other effects, and taken as an asset. When it was demanded of him by plaintiff's agent, he (defendant) claimed no right to hold it except as a collateral to an indebtedness to the assignors, and distinctly based his right to its possession on his appointment as assignee, and he subsequently sold it as assignee, as the referee finds.

· This action was commenced against him on April 3, 1877, for a conversion of the stock in February, 1875. The statute above cited declares that: "No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to, or vested in, such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee." The points of the respondent do not inform us what position he took with respect to this limitation, or on what ground the referee disregarded it. The referee expressly found that the cause of action accrued before the last day of February, 1875, and that the action was not brought within two years from that time. The defendant is sued, it is true, personally, and not as assignee, but this is the act of the plaintiff, and cannot deprive defendant of any legal rights. If a sheriff who had taken goods wrongfully were sued personally, and not as sheriff, it would not deprive

him of his right to show that he had a process in his hands and seized the plaintiff's goods under it, and that the action is barred because not brought within three years (Code, § 92 ; *Dennison* v. *Plumb*, 18 Barb. 89). It cannot be said that the defendant should be deprived of the benefit of the statute of limitations, because the property he converted never belonged to his assignors and never passed by the assignment. If the property had actually passed by the assignment, that is to say, if the assignors rightfully held it, the plaintiff would have had no action of this character, and it is to bar, after two years, all actions touching the title to property that the statute cited was passed. The language of the enactment is, that no suit shall be brought touching any " property or rights of property " " transferable to or vested in" the assignee. The expression " transferable " signifies that which may be, or is capable of being, transferred ; this stock is of such a character, *i. e.*, it would pass by the assignment to an assignee in bankruptcy. If the assignee were protected only from suits touching property in which the assignors had an undoubted right or interest, and which actually passed by the assignment to him, it would exclude the most important cases that might arise in the administration of the trust, and the most onerous of the liabilities the assignee incurs. As there is nothing in the act to warrant the inference of such an intention on the part of the legislators, I construe the section in question in its broadest sense, and deem the limitation of actions against the assignee to extend to all questions of title as to property which comes to his hands from the assignors in bankruptcy by virtue of the assignment, whether the assignors had or had not an assignable interest therein. The question is not, whether the assignors had such an interest, but whether the assignee took and dealt with the property in good faith as property which the assignees had the right to transfer. (*Sedgwick* v. *Casey*, 4 Nat. Bank Reg. 496 ; *Smith* v. *Crawford*, 9 id. 38.) The case of a sheriff who in good faith (even with notice of another's claim of title) takes the property of B. upon an execution against A., bears some analogy to the case

of an assignee in bankruptcy who holds property transferred to him by the assignment against the true owners of it. The sheriff would be protected by the statute of limitations in his case, which provides for the time within which actions may be brought against him "for the doing of an act in his official capacity in virtue of his office," although his official duty was to take the property of the defendant in the execution, and no other. (*Dennison* v. *Plumb*, *supra*.) The analogy between the cases is not, however, complete, for the reason that the assignee in bankruptcy can only claim the benefit of his statute of limitations in actions touching property which came to him by the assignment, and as to which property the adverse claim existed while it was in the hands of the assignors (*Norton* v. *De la Villebeuve Case*, 13 Nat. Bank Reg. 304 ; *Re Conant*, 5 Blatchf. 54), although the right to institute the suit against the assignee may not arise until after the bankruptcy. The statute has no reference to cases arising merely out of the dealings of the assignee with the trust property ; but was intended to cover questions affecting the amount or extent of the *assets*. (*Re Conant* above cited.) The present case is one of those clearly embraced within the class thus defined. The stock was in the custody of the assignors before the assignment, *i. e.*, it was deposited in their safe for safe keeping by plaintiff's husband. They claim it was pledged to them as collateral to his obligations. Whether it was so pledged or not was a question upon facts anterior to the assignment, and was the issue in this action. The dispute as to title existed before the assignors delivered the stock to their assignee because the adverse claim then existed ; but the *right of action against the assignee* arose after the assignment, that is, upon his refusal to deliver it to the rightful owner on demand. From that time the statute commenced to run; plaintiff had two years in which to invoke her legal remedy against the assignee, and it is her own fault if she neglected to do so until her action was barred.

I think the judgment should be reversed and a new trial ordered, with costs to abide event.

CHARLES P. DALY, Ch. J., and VAN HOESEN, J., concurred.

Judgment reversed and new trial ordered, with costs to abide event.